[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-12317
Non-Argument Calendar
_____

Agency No. A208-358-662

LUIS FRANCISCO ROJAS COLINA,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(March 15, 2019)

Before ROSENBAUM, JILL PRYOR, and ANDERSON, Circuit Judges.

PER CURIAM:

Luis Francisco Rojas Colina seeks review of the Board of Immigration

Appeals's ("BIA") final order affirming the Immigration Judge's ("IJ") denial of his

applications for asylum and withholding of removal. Rojas Colina challenges the agency's finding that he was ineligible for relief because he did not establish that his past mistreatment or feared future persecution, was on account of his real or imputed political opinion. After careful review, we deny the petition.

## I.

Rojas Colina is a native and citizen of Venezuela who last entered the United States in February 2015 as a nonimmigrant visitor. He was placed in removal proceedings after he was found to have violated the terms of his visa status by working without authorization. He conceded removability and then applied for relief in the form of asylum and withholding of removal based on political opinion.[1]

## A.

Rojas Colina, who was represented by counsel, testified to the following at a merits hearing before an IJ. He has a college degree in electrical engineering. From 2011 to 2014, he worked as a Field Service Supervisor for Samsung in Caracas, Venezuela. Before that, he worked for another telecommunications-device company. He had also been involved in political parties opposed to the Venezuelan government since 2004. Rojas Colina first joined the Primero Justicia political party

---

[1] Rojas Colina also applied for withholding under the Convention Against Torture, but his briefing does not address this ground for relief. So this issue is abandoned.

2

before switching to the Un Nuevo Tiempo party when it split from Primero Justicia in 2006.  He was politically active with Un Nuevo Tiempo through 2015.

According to Rojas Colina, the events that caused him to leave Venezuela in fear began in 2013.  Around this time, Samsung and the Venezuelan government had announced that they planned to open an assembly plant in Venezuela as a joint venture.  The plan also included opening new service centers.  Rojas Colina was in charge of hiring for part of the project.

Because of this hiring authority, Rojas Colina was targeted by a government-affiliated telecommunications labor union.  The labor union wanted to dictate whom he hired to work on the Samsung project.  Rojas Colina refused, stating that he would hire people with the right skills and that nobody outside of Samsung would influence his hiring decisions.

The labor union's pressure campaign against Rojas Colina included threats through phone calls, text messages, and messages left with his secretary.  At first, the threats were general, and he did not take them seriously.  The union threatened to stop the deal if he did not meet with them, or to do something to make him meet them.  This went on for about four to six months.  After that, the threats became more serious and specific, invoking details about his schedule and his brother and sister.  And by mid-2014, according to Rojas Colina, the threats also included

3

references to his political activity. Specifically, he was accused of trying to make the Venezuelan government look bad because he was a member of the opposition.

In addition to the threatening messages, Rojas Colina believes the labor union attempted to kidnap him on November 26, 2014. Just before that date, the union had warned him that they were "going to hit on [him]" and that he would need "four eyes to see" anywhere he went. Then, as he was driving home on November 26, he was hit twice by a government vehicle and chased for "two or three minutes." His car was damaged and he received some minor injuries. He tried to report the incident to authorities, but the police told him that they could not receive his complaint because he did not have a name or tag number for the other vehicle. After this incident, Rojas Colina received a call stating that "next time . . . we will complete the job."

Rojas Colina resigned from Samsung in January 2015 and left Venezuela the following month. The threats ended once he left Venezuela. But he believed that he would be on the union's radar if he returned to Venezuela, and he asserted that political conditions in Venezuela had worsened since he came to the United States.

**B.**

The IJ denied Rojas Colina's applications for relief. The IJ found that he testified credibly but that he had not established that the threats and vehicular attack were on account of his political opinion, whether real or imputed. Rather, according

4

to the IJ, Rojas Colina was threatened and harassed because he refused the labor union's demands to use his position at Samsung to hire union employees. While the labor union may have referenced his political activities and other details of his life in an attempt to threaten him, the IJ stated, he was targeted "exclusively due to his position with Samsung" out of a motivation to have him hire union members, not because of his political opinions. Accordingly, the IJ found that Rojas Colina had failed to establish his eligibility for asylum or withholding of removal.

The BIA denied Rojas Colina's appeal. The BIA stated that Rojas Colina "offered only speculation that his imputed political opinion was a central motivation" for the threats and vehicular attack. "It is equally plausible," the BIA stated, "that the threats and road incident were motivated solely by the desire to influence the respondent's hiring decisions." Accordingly, the BIA affirmed the IJ's denial of asylum and withholding of removal. Rojas Colina now petitions this Court for review of the denial of asylum of withholding of removal.

## II.

In immigration cases, we review the agency's factual findings for substantial evidence and its conclusions of law *de novo*. *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009). Review for substantial evidence is deferential and is based on a construction of the record evidence that is most favorable to the agency's decision. *Id.* We must affirm the agency decision "if it is supported by

5

reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* at 1351 (quotation marks omitted). Findings of fact may be reversed only if the record compels a different result. *Id.*

The government has the discretion to grant asylum if the applicant establishes that he is a "refugee." 8 U.S.C. § 1158(b)(1)(A). A "refugee" is someone who is unable or unwilling to return to her country of nationality "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id.* § 1101(a)(42)(A). One of these protected grounds must be "at least one central reason" for the persecution. *Id.* § 1158(b)(1)(B)(i). Similarly, an applicant for withholding of removal must establish that his life or freedom would be threatened upon removal "because of the [his] race, religion, nationality, membership in a particular social group, or political opinion." *Id.* § 1231(b)(3)(A). In other words, an application must establish a "nexus" to a protected ground to be eligible for asylum or withholding of removal. We will not reverse a finding that an applicant failed to demonstrate a nexus if the finding is supported by substantial evidence. *Rodriguez Morales v. U.S. Att'y Gen.*, 488 F.3d 884, 890 (11th Cir. 2007).

Here, substantial evidence supports the agency's determination that Rojas Colina failed to establish that he has been or will be persecuted because of his real or imputed political opinions. *See Kazemzadeh*, 577 F.3d at 1350. The record

6

supports the agency's finding that the threats and vehicular attack were motivated by a desire to influence his hiring decisions. Rojas Colina had been politically active since 2004 without incident, and he was not threatened until he was given hiring authority for the joint venture between Samsung and the government in 2013. By Rojas Colina's own account, the goal of the threats was to influence his hiring decisions. These threats escalated after he repeatedly refused to hire union members for Samsung. While that escalation included using details about his private life against him, including his opposition political activities, he was never ordered to stop his political activities or denounce his allegiance to the opposition party. Rather, all he was asked to do was hire union members. Thus, while some evidence supports Rojas Colina's interpretation of events, "the evidence equally supports an inference that he was threatened simply because of his refusal to [do as the labor union asked], and [so] the record does not 'compel' [us] to [reverse]." *Rodriquez Morales*, 488 F.3d at 891.

To the extent that Rojas Colina argues that the BIA legally erred by finding that a political motive for the threats was "equally plausible" and yet not finding it was "one central reason" for the claimed persecution, this argument fails. The BIA's statement about equal plausibility was not inconsistent with the "one central reason" nexus standard, but was merely a statement that, because Rojas Colina's belief in a

7

central political motive was based on speculation, it was equally plausible that the union members had no political motive whatsoever. *See id.*

Because Rojas Colina has failed to demonstrate that the agency committed a legal error or that the record compels a finding that he met the nexus requirement, we deny his petition for review.

**PETITION DENIED.**

8